UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| PAUL MURPHY, | ) | | |
| | ) | | |
| Plaintiff, | ) | 10 C 607 | |
| | ) | | |
| vs. | ) | Judge Feinerman | |
| | ) | | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

Having successfully challenged the Social Security Administration's denial of his disability insurance benefit claim, 2013 WL 2589711 (N.D. Ill. June 11, 2013), Paul Murphy moves for an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Doc. 28. The motion is granted.

**Background**

This action arises from Murphy's application for disability insurance benefits with the Social Security Administration. Murphy's application was denied, as was his request for reconsideration. An administrative law judge ("ALJ") then conducted a hearing on Murphy's claim and found him not disabled. After the Social Security Appeals Council denied Murphy's request for review of the ALJ's decision, Murphy sought review by this court pursuant to 42 U.S.C. § 405(g). The parties cross-moved for summary judgment, and the court granted summary judgment to Murphy. The court held that the ALJ's opinion erred (1) by failing to adequately explain why the medical opinion of Murphy's treating physician was rejected and (2) by failing to consider Murphy's obesity in combination with his other impairments. 2013 WL 2589711, at *7, 13.

1

With respect to the first ground, the court held that "[n]one of the ALJ's explanations as to Dr. Duggal [Murphy's treating cardiologist] qualify as 'good reasons' for rejecting his opinion," and concluded that "[b]ecause the ALJ did not explicitly address [certain factors it must consider, including the length of the treatment relationship and the frequency of examination] or indicate what weight the treating physician's opinions were given, remand is warranted." *Id*. at *8, 10. The court found that the ALJ's "reliance on [the state agency doctors' opinions] was inappropriate" because "the ALJ did not adequately address why the state agency doctors' opinions were entitled to greater weight." *Id*. at *10, 11. In defending the ALJ's opinion on this issue, the Commissioner's summary judgment brief argued "that the ALJ rightly gave less weight to Dr. Duggal's opinion because (1) Dr. Duggal's 2007 and 2008 [Cardiac Functional Capacity Questionnaires] assessments noted increasingly serious physical limitations without showing corresponding deteriorations in Murphy's health, in contravention of *Griffith v. Callahan*, 138 F.3d 1150, 1155 (7th Cir. 1998); (2) ejection fractions measure the ability of the heart to pump blood, and the more blood a heart can pump, the 'slight[er]' the physical limitations [and Murphy's ejection fractions in 2008 were approaching the normal range]; and (3) Murphy may have had NYHA [New York Heart Association] Class II symptoms like shortness of breath and fatigue, but those symptoms were not severe because Dr. Duggal had cleared Murphy for light work in March 2006 without a sit-stand option or the need to elevate his legs." *Id*. at *11. The Commissioner's brief added that "the ALJ gave the state agency doctors' opinions more weight for 'multiple reasons,' including the reasons discussed above and that Dr. Duggal's opinion [recommending a sit-stand option and leg elevation] was inconsistent with a Class II finding." *Ibid*. In holding that "the ALJ's decision cannot be sustained based on [these] new rationales pressed by the Commissioner's brief," the court reasoned:

> These arguments may be good ones, but they were not offered in the ALJ's decision. The court's review is limited to the reasons articulated in the ALJ's decision, not the post-hoc rationale submitted in the Commissioner's brief. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Roddy* [*v. Astrue*], 705 F.3d [631,] 637 [(7th Cir. 2013)]; *Martinez* [*v. Astrue*], 630 F.3d [693,] 694 [(7th Cir. 2011)]; *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("These post-hoc rationalizations not only undermine our confidence in the accuracy of the Commissioner's representations of the record, but we have repeatedly warned that attempts to supplement the ALJ's decision are inappropriate…. [T]he government may not provide the missing justification for an ALJ's decision."); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that "a persuasive brief [cannot] substitute for" the ALJ's deficient opinion); *Larson* [*v. Astrue*], 615 F.3d [744,] 749 [(7th Cir. 2010)].

*Id*. at *12.

Regarding the second ground for granting summary judgment to Murphy, the court held that the "ALJ's RFC [residual functional capacity] determination is … deficient in failing to sufficiently consider Murphy's extreme obesity," and that, "even if the ALJ mentions obesity as a severe impairment, as the ALJ did here, if the ALJ's decision did not consider its significance in relation to other medical ailments, remand is warranted." *Ibid*. (internal quotation marks omitted). Although the Commissioner argued in her summary judgment brief that the ALJ had stated that he "considered all symptoms" and had found that because of Murphy's "obesity and history of heart disease, he should never climb ladders, ropes or scaffolds, work on moving or unstable surfaces, crouch or crawl, and he should only occasionally climb ramps or stairs, stoop or kneel," the court pointed out that "the ALJ's opinion does not address how Murphy's extreme obesity bears on his ability to sit or stand for at least six hours, or how his extreme obesity interacts with his Class II designation, the ejection fractions, and the fatigue and shortness of breath that already arise from ordinary physical activity." *Ibid*. Thus, the court ordered that "[o]n remand, the ALJ should engage in a cumulative assessment of Murphy's cardiac impairments and obesity that the court can follow and assess." *Id*. at *13.

3

**Discussion**

The EAJA states in relevant part that "a court shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in any civil action … brought by or against the United States … unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Precedent holds that "a district court may award attorney's fees [under the EAJA] where (1) the claimant was a 'prevailing party,' (2) the government's position was not 'substantially justified,' (3) no special circumstances make an award unjust, and (4) the claimant filed a timely and complete application with the district court." *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). In opposing Murphy's fee motion, the Commissioner addresses only the second requirement, arguing that that the agency's position was substantially justified.

"To be substantially justified, the Government's position must be 'justified in substance or in the main' or 'justified to a degree that could satisfy a reasonable person.'" *Kholyavskiy v. Holder*, 561 F.3d 689, 691 (7th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Put another way, the Commissioner's position "is substantially justified if her conduct has a reasonable basis in law and fact, that is, if a reasonable person could believe the position was correct." *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (internal quotation marks omitted). "The Commissioner bears the burden of proving that her position was substantially justified." *Ibid*. The Commissioner can meet her burden if: "(1) [the agency] had a reasonable basis in truth for the facts alleged, (2) [the agency] had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts alleged and the theory propounded." *Kholyavskiy*, 561 F.3d at 691; *see Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). As the Seventh Circuit has explained:

> [C]ourts are more likely to conclude that the Government's position is
> substantially justified if it is supported by our precedent or that of other
> courts. … Moreover, "uncertainty in the law arising from conflicting authority
> or the novelty of the question weighs in the government's favor when
> analyzing the reasonableness of the government's litigation position."
> *Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir. 1994). By contrast, "[s]trong
> language against the government's position in an opinion assessing the merits
> of a key issue is evidence in support of an award of EAJA fees,"
> *Golembiewski*, 382 F.3d at 724, as is wholesale rejection of the Government's
> arguments by the merits panel, *see id*. at 725 (awarding fees and observing
> that "[w]e did not reject any issue raised by the plaintiff on appeal nor did we
> adopt or affirm any position taken by the Commissioner").

*Kholyavskiy*, 561 F.3d at 691-92.

Significant for present purposes, the "'position of the United States' includes the underlying agency conduct as well as the agency's litigation position." *Marcus*, 17 F.3d at 1036; *see* 28 U.S.C. § 2412(d)(2)(D) ("'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"); *Krecioch v. United States*, 316 F.3d 684, 689 (7th Cir. 2003) ("This [substantial justification] determination considers the government's position both in its underlying action and the litigation posture it took while defending the validity of that action in court."). Thus, "EAJA fees may be awarded if either the government's prelitigation conduct or its litigation position are not substantially justified," meaning that fees "may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus*, 17 F.3d at 1036. "In other words, the fact that the government's litigating position was substantially justified does not necessarily offset prelitigation conduct that was without a reasonable basis," and vice versa. *Ibid*. "A decision by an ALJ constitutes part of the agency's pre-litigation conduct." *Golembiewski*, 382 F.3d at 724.

5

Although "the court must consider both the agency's pre-litigation conduct and its litigation position, … the court ultimately must make one binary decision—yes or no—as to the entire civil action." *Suide v. Astrue*, 453 F. App'x 646, 648-49 (7th Cir. 2011). Because "it is rare that a single factor will be dispositive of whether the government's position was substantially justified, … the district court's analysis should contain an evaluation of the factual and legal support for the government's position throughout the entire proceeding." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). The mere fact that the court ruled for the claimant against the Commissioner does not mean that the Commissioner's position was not substantially justified. *See Pierce*, 487 U.S. at 569; *Stewart*, 561 F.3d at 683.

In her brief opposing Murphy's fee motion, the Commissioner focuses exclusively on the agency's pre-litigation conduct, arguing that the ALJ was substantially justified in discounting Dr. Duggal's medical opinion and in giving the consideration he did to Murphy's obesity. Doc. 34 at 3-6. Echoing her summary judgment brief, Doc. 21-2, the Commissioner contends that the ALJ had a reasonable basis to reject Dr. Duggal's opinion in favor of the state agency doctors' opinions because "Dr. Duggal's 2007 and 2008 opinions drastically differed from his August 2006 release to light duty work with a twenty-five pound lifting [limitation]" and "were wholly unsupported by [Dr. Duggal's] examination findings and statements concerning Plaintiff's condition." Doc. 34 at 4-5. The Commissioner adds that "[w]here a physician changes his opinion for the worse, and the medical record does not show a corresponding deterioration in the claimant's condition, the ALJ may reasonably reject the physician's changed opinion." *Id*. at 3-4. And again echoing her summary judgment brief, the Commissioner asserts that "[t]he ALJ … explained that Dr. Duggal's 2007 and 2008 opinions were inconsistent with Plaintiff's New York Heart Association functional Class II rating," and thus "[t]he fact that individuals with a Class II

rating have only a 'slight limitation of physical activity,' as opposed to the disabling limitations that Dr. Duggal identified in 2007 and 2008, even though Dr. Duggal's notes showed Plaintiff's condition had not changed, was another reason why the ALJ's rejection of the 2007 and 2008 opinions was at least 'reasonable.'" *Id*. at 5.

With respect to the ALJ's consideration of Murphy's obesity, the Commissioner again draws heavily from her summary judgment brief in arguing that "the ALJ … did, in fact, consider Plaintiff's obesity in combination with all of Plaintiff's other symptoms" because the ALJ "explicitly stated that '[i]n making this [residual functional capacity] finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Id*. at 6. The Commissioner adds that the ALJ characterized Murphy's obesity as a "severe" impairment and included "specific obesity-related limitations in his RFC finding," meaning that this court's concern was with the ALJ's "articulation …, not evaluation," making "the Commissioner's litigation on the obesity issue … at least 'reasonable.'" *Ibid*.

Standing alone, the Commissioner's pre-litigation conduct (the ALJ opinion) was substantially justified. In granting summary judgment to Murphy, this court did not reject the ALJ's bottom-line conclusion that Murphy was not disabled. Rather, this court held that the ALJ had failed to "adequately address why the state agency doctors' opinions were entitled to greater weight" and to "engage in a cumulative assessment of Murphy's cardiac impairments and obesity." 2013 WL 2589711, at *11, 13. Precedent holds that an ALJ opinion suffering from those kinds of flaws may be substantially justified.

In *Grieves v. Astrue*, 360 F. App'x 672 (7th Cir. 2010), the Seventh Circuit held that the ALJ was substantially justified (albeit wrong) in adopting the medical opinion of state agency

7

doctors rather than giving controlling weight to the opinion of the plaintiff's treating physician where "the district court characterized the problem with the ALJ's decision as a failure to 'supply supportive reasons,' and 'connect all the dots in his analysis.'" *Id*. at 675. In so holding, *Grieves* distinguished *Golembiewski*, where the Seventh Circuit ruled that EAJA fees were warranted where the ALJ's decision "contained no discussion of credibility at all; … mischaracterized the facts by finding 'no evidence of herniated discs when there was clear evidence of herniated discs'; and … 'improperly ignored three distinct lines of evidence.'" *Id*. at 674-75 (quoting *Golembiewski*, 382 F.3d at 725). *Grieves* reasoned that "unlike in *Golembiewski*, the ALJ [in *Grieves*] … did not ignore entire lines of evidence or find that there was no evidence in support of [the plaintiff's] application. Rather, the ALJ acknowledged contrary facts and chose to discount them, albeit without adequate explanation." *Id*. at 675.

*Grieves* added that its circumstances were "nearly identical" to those in *Cunningham v. Barnhart*, 440 F.3d 862 (7th Cir. 2006), which affirmed the denial of EAJA fees where the ALJ denied disability benefits after finding that the plaintiff was not credible and after discounting the treating physician's opinion. *Grieves*, 360 F. App'x at 675. The district court in *Cunningham* had remanded on the merits for "further articulation of the analysis" in part because the ALJ "failed to consider other evidence regarding [the plaintiff's] back problems, such as his treatment efforts, medications, and daily activities." 440 F.3d at 864. In holding that the ALJ's determination was nonetheless substantially justified, the Seventh Circuit reasoned that "[i]t was not that the ALJ failed to engage in any credibility determination as in *Golembiewski*; rather, the ALJ failed to connect all the dots in his analysis." *Id*. at 865. The court also held that the ALJ's decision to discount the treating physician's opinion was substantially justified because "the ALJ

8

did generally mention the objective medical evidence," and "there was medical evidence in the record to support the ALJ's conclusion, even though it was not fully explained." *Ibid*.

In this case, the ALJ did not commit the same kind of error as the ALJ in *Golembiewski*, who ignored entire lines of evidence and drew conclusions that plainly contradicted the evidence. Instead, like the ALJs in *Grieves* and *Cunningham*, the ALJ here failed to "adequately address" the connection between his conclusion and the objective evidence in the record when discounting Dr. Duggal's opinion. And the ALJ here did address Murphy's obesity, though not in a cumulative manner. As in *Cunningham*, this was not a failure on the ALJ's part to consider Murphy's obesity altogether, but rather a failure to consider obesity in a cumulative context and to "connect the dots" in his analysis. Given all this, the Commissioner's pre-litigation conduct in this case, while falling short, was substantially justified. *See Stein v. Sullivan*, 966 F.2d 317, 319-20 (7th Cir. 1992) (holding that the ALJ's decision was substantially justified where "there was some contrary evidence that the [ALJ] failed to consider, or at least failed to articulate that he considered").

That does end the inquiry, however, for the court must consider "both the agency's pre-litigation conduct *and* its litigation position" in determining whether the agency's position is substantially justified. *Suide*, 453 F. App'x at 648-49 (emphasis added); *see Golembiewski*, 382 F.3d at 724; *Krecioch*, 316 F.3d at 689. The Commissioner fails to directly address, much less defend, the agency's litigation position in her brief opposing Murphy's fee motion. For that reason alone, the Commissioner cannot meet her burden of proving that the agency's litigation position was substantially justified. *See Floroiu v. Gonzales*, 498 F.3d 746, 748-49 (7th Cir. 2007) (per curiam) (holding that the agency did not meet its burden of establishing that its position was substantially justified where, "[i]n its response [to the fee motion, it] does not cite a

9

single authority in support of its position"); *Doty v. United States*, 71 F.3d 384, 385-86 (Fed. Cir. 1995) (holding that "the government has not met its burden under the EAJA" where it operated under the erroneous assumption that "[t]he sole issue before the Court is whether the position of the United States regarding the issues presented *in the appeals in this Court* was substantially justified," thereby failing to defend "its litigating position [prior to the appeal]" and "the agency's administrative position"). In any event, even putting aside forfeiture, the court finds that the Commissioner's litigation position was not substantially justified.

In granting summary judgment to Murphy, this court held that the Commissioner's merits brief offered post-hoc rationales for the ALJ's decision, violating *SEC v. Chenery Corp.*, *supra*, which precludes an agency's lawyers from defending the agency's decision on grounds not relied upon by the agency itself during the administrative proceedings. 2013 WL 2589711, at *12. By the time the Commissioner filed her merits brief in this case, the Seventh Circuit had repeatedly and emphatically rejected the Commissioner's litigation positions under the *Chenery* doctrine. *See Larson*, 615 F.3d at 749 ("The Commissioner tries to salvage the ALJ's conclusion by pointing to one instance in 2004 when Dr. Rhoades described Larson's demeanor as 'pleasant and settled' and by recalling that the state-agency psychologist thought that Larson had only 'moderate' limitations in social functioning. But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here."); *Kellems v. Astrue*, 382 F. App'x 512, 516 (7th Cir. 2010) ("Of course [*Chenery*] forbids the commissioner to defend the ALJ's decision on grounds not embraced by [the] ALJ.") (internal quotation marks omitted); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (holding that the Commissioner's lawyer violated *Chenery* by defending the agency's decision "on a ground that the agency had not relied on in its decision"); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("The Social Security Administration's lawyer relied

heavily on those reports in her brief and at argument in urging us to uphold the denial of disability benefits. But in doing so she violated the *Chenery* doctrine, which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") (citation omitted); *Collins v. Astrue*, 324 F. App'x 516, 519 (7th Cir. 2009) ("we may not seek alternative bases for the ALJ's conclusion that the record might permit"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("In defending the administrative law judge's decision on a ground that he himself did not mention, the government violates the *Chenery* principle."); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (per curiam) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ"); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("The Commissioner insists that the record as a whole fills the gaps in the ALJ's analysis left by the reports of Dr. Brint and Dr. Hawkins. But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to her conclusion.") (citations and internal quotation marks omitted); *see also Gatimi v. Holder*, 606 F.3d 344, 347 (7th Cir. 2010) ("The *Chenery* doctrine binds the government's lawyers in judicial review proceedings to the grounds of the agency's decision …. Neither in this regard, nor in any other that occurs to us, is there any difference between immigration cases and other agency cases.").

Because application of the *Chenery* doctrine had been unequivocally established by numerous Seventh Circuit decisions, the Commissioner's litigation position in this case, which violated *Chenery*, was not substantially justified. *See Bassett v. Astrue*, 641 F.3d 857, 860 (7th

11

Cir. 2011) (noting that "it typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified—something like … the commissioner's defending the ALJ's opinion on a forbidden basis"); *Hackett v. Barnhart*, 475 F.3d 1166, 1175 (10th Cir. 2007) (holding that because "the Commissioner's theories [on the merits] were based on reasoning not explicitly relied on by the ALJ," he "was acting in violation of *Chenery*, and … it would therefore be improper to rely on the Commissioner's litigation position to deny plaintiff's EAJA application") (internal quotation marks and brackets omitted); *Golembiewski*, 382 F.3d at 724 (holding that the government's litigation position was not substantially justified because the Commissioner "relied upon facts not discussed by the ALJ" in defense of the ALJ's decision, thereby "violat[ing] clear and long judicial precedent"); *Todd v. Colvin*, 2013 WL 6065316, at *2 (N.D. Ill. Nov. 14, 2013) (ruling that the Commissioner's violation of the *Chenery* doctrine was a "*faux pas* that the Seventh Circuit has repeatedly found inexcusable," rendering her litigation position "substantially unjustified"); *Johnson v. Astrue*, 2011 WL 2433498, at *6 (N.D. Ill. June 14, 2011) ("The Seventh Circuit has held that [attempting to justify the ALJ's decision using post-hoc rationales] violates the principles of [*Chenery*]. … The Commissioner should have known that well-settled legal principle when drafting the summary judgment brief, and was, therefore, not substantially justified in attempting to support the ALJ's findings with after-the-fact citations to additional evidence.").

Having considered the agency's pre-litigation conduct and the Commissioner's litigation position, the court must make "only one determination for the entire civil action" as to whether the Commissioner's position was substantially justified. *See Golembiewski*, 382 F.3d at 724; *Suide*, 453 F. App'x at 648-49. As noted above, "[a]ttorney's fees may be awarded if the Commissioner's pre-litigation conduct *or* his litigation position lacked substantial justification."

*Murphy v. Astrue*, 351 F. App'x 119, 122 (7th Cir. 2009) (emphasis added); *see Marcus*, 17 F.3d at 1036. While the ALJ's denial of benefits was substantially justified, the Commissioner's position as a whole was not substantially justified because she had no reasonable basis to offer impermissible post-hoc rationales for the ALJ's decision; indeed, the Commissioner does not even address her violation of *Chenery*, let alone maintain that the violation does not preclude a finding of substantial justification. *See EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 892 (7th Cir. 1994) ("Since EAJA fees are appropriate where either the government's prelitigation conduct or its ligation position are not substantially justified, any initial justification provided by the letters [offered by the government to demonstrate reasonableness] does not protect the [government] from an award of fees for its unjustified litigation position.") (internal quotation marks and citation omitted); *Allbritton v. Comm'r of Internal Revenue*, 37 F.3d 183, 185 (5th Cir. 1994) (per curiam) (holding that the agency's position was not substantially justified because it "continu[ed] to litigate [an] issue despite constant jurisprudence to the contrary"); *NRDC v. U.S. E.P.A.*, 703 F.2d 700, 712 (3d Cir. 1983) (holding that "the agency has failed utterly to establish substantial justification" where it "continued to insist that it was free to litigate [an] issue" involving the agency's decision to dispense with notice and comment in rulemaking, when "[t]he law was already settled that this could not lawfully be done"); *Stevenson v. Chater*, 1995 WL 632046, at *3-4 (N.D. Ill. Oct. 26, 1995) (holding that the Commissioner's "failure to offer a coherent defense of its litigating position leads to the conclusion that it has failed to bear its burden of proving that its 'position' was substantially justified," and noting that "even if the ALJ's decision … could be characterized as reasonable …, this does not mandate the conclusion that the Commissioner's subsequent defense of that

13

decision is also reasonable"). Thus, Murphy is entitled to an award of reasonable attorney fees and costs pursuant to the EAJA.

As to the amount of the fee award, the EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The special factor Murphy identifies in seeking a $175 hourly rate is a cost of living increase commensurate with the Consumer Price Index ("CPI"). Doc. 28 at 11. That increase is warranted—indeed, the Commissioner offers no objection, thus forfeiting the point—and thus attorney fees will be awarded at an hourly rate of $175. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (approving the plaintiff's requested cost of living increase tied to the CPI where "[t]he government does not object to the requested adjusted statutory maximum hourly rate"); *Johnson v. Sullivan*, 919 F.2d 503, 504 (8th Cir. 1990) (holding that "the Consumer Price Index constitutes 'proper proof' of the increased cost of living since the EAJA's enactment and justifies an [increased] award of attorney's fees" where "[t]he [government] presented no evidence to suggest that the requested hourly rate was unreasonable, unjustified, or otherwise improper"); *Gibson ex rel. C.E. v. Astrue*, 2013 WL 250668, at *2 (N.D. Ill. Jan. 23, 2013) ("Courts in this district have allowed claimants to use the Consumer Price Index to adjust hourly attorneys' rates to account for cost of living increases in EAJA cases and have found similar rates [of between $250 and $300 per hour] to be justified under the EAJA.") (citing cases).

Murphy's motion details the attorney hours and costs associated with litigating this case. Doc. 28-3. Given the size of the administrative record and the complexity of this case, attorneys Barry Schultz and James Schiff reasonably expended 65.4 hours in litigating this case, and their

legal assistants reasonably expended 4.3 hours of assistant time at the rate of $95 per hour. *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 574-75, 590 (2008) (holding that "a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates," which ranged from $50 to $95 per hour); *Krecioch*, 316 F.3d at 687 ("Fees for work done by paralegals can be awarded under the fee-shifting provision of the EAJA."); *Bias v. Astrue*, 2013 WL 615804, at *1-2 (N.D. Ill. Feb. 15, 2013) (finding the $95 hourly rate requested for legal assistant work reasonable where "[t]he Commissioner does not challenge [its] reasonableness"). As with the hourly rate, the number of attorney and legal assistant hours draws no objection from the Commissioner. Costs of $13.30 for printing briefs are reasonable, as are the 2.5 hours that Schultz expended preparing the reply brief for this fee motion. *See Cruz v. Comm'r of Soc. Sec.*, 437 F. App'x 67, 70 (3d Cir. 2011) (affirming the district court's decision allowing reimbursement for "9.2 hours … that [the plaintiff's] attorney spent responding to the Commissioner's opposition to [the plaintiff's] fee petition"); *Sanders v. Astrue*, 287 F. App'x 721, 723 (10th Cir. 2008) (noting that the plaintiffs "successfully sought EAJA attorney fees, including fees for preparing each EAJA fee motion"); *Cameron v. Barnhart*, 47 F. App'x 547, 552 (10th Cir. 2002) (concluding that the plaintiff's fee request, which included time her lawyer spent drafting the reply brief, was "well within the bounds of reasonableness"); *Wilson v. Colvin*, 2013 WL 1385590, at *1-2 (N.D. Ill. Apr. 4, 2013) (granting the plaintiff's attorney's request for reimbursement for 2.6 hours spent preparing the reply brief for the fee motion). Accordingly, the court approves $12,291.00 in attorney fees and $13.30 in costs, for a total award of $12,304.30.

**Conclusion**

For the foregoing reasons, the court grants Murphy's motion for attorney fees and costs and awards him $12,304.30. In accordance with *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), the award shall be made payable to Murphy, subject to an offset to satisfy the preexisting debt, if any, that Murphy owes the United States. However, if the Commissioner determines that Murphy does not owe a debt for which EAJA fees may be offset, then the Commissioner will make payment payable to Murphy's counsel, pursuant to the assignment language in Murphy's fee agreement with counsel. *See Mathews-Sheets v. Astrue*, 653 F.3d 560, 565-66 (7th Cir. 2011).

December 2, 2013

United States District Judge